UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EDWARD KRUPMAN,

Plaintiff,

- v-

IONA PREPARATORY SCHOOL,

Defendant,
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED  4/13/11

**OPINION AND ORDER**

08 CIV 7713 (RPP)

*REDACTED*

**ROBERT P. PATTERSON, JR., U.S.D.J.,**

## I. Introduction

On August 25, 2008, Plaintiff Edward Krupman ("Mr. Krupman") filed a complaint ("Compl.") against Defendant Iona Preparatory School ("Iona"), alleging that the school failed to renew his employment contract in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, et seq. Mr. Krupman, who is 76, seeks declaratory relief, reinstatement, back pay, front pay, and damages.

On July 2, 2010, Iona moved for summary judgment on the complaint. Plaintiff submitted answering papers, under seal pursuant to a July 29, 2009 confidentiality order, on October 10, 2010. Iona submitted its reply papers on November 12, 2010. On February 4, 2011, this Court held oral argument on this motion.

For the following reasons, Defendant's motion for summary judgment is denied.

## II. Facts[1]

Iona is an all male Christian Brothers high school located in New Rochelle, New York. (Defendant's Statement pursuant to Local Rule 56.1 ("Def. Stmt.") at ¶1). It is a Catholic school although it is not associated with the Catholic Dioceses. (Id.) Iona hired Mr. Krupman as a

-----

[1] Pursuant to the standard for summary judgment motions, all facts are construed in favor of the non-moving party.

guidance counselor in 1998 pursuant to a one-year employment contract.  (See id.; Plaintiff's

Statement pursuant to Local Rule 56.1 ("Pl. Stmt.") at ¶ 21.)  The contract was "subject to

renewal at the sole discretion of Iona on an annual basis."  (Declaration of Vincent A. Nagler

("Nagler Decl.") dated July 2, 2010, Ex. D at ¶ 13.)  Prior to his employment at Iona, Mr.

Krupman worked in the Bedford (N.Y.) School District as a guidance counselor for about 30

years.  (See Def. Stmt. at ¶ 13; Pl. Stmt. at ¶ 13.)

        In March 2007, Mr. Krupman had a meeting with Joseph Klein, Iona's Director of

Guidance, and George Teasdale, Iona's Principal, in which he was informed that his contract

would not be renewed for the following year.  (See Def. Stmt. at ¶ 261; Pl. Stmt. at ¶ 261.) Mr.

Krupman was replaced with Gregory Quirolo,      effective the following school year.

(Defendant's Reply Statement pursuant to Local Rule 56.1 "Def. Reply Stmt." at ¶ 287; Nagler

Decl., Ex. Q at ¶ 8.)

## III. Summary Judgment Standard

        In order to meet its burden on a motion for summary judgment, the moving party must

demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a

matter of law.  FED. R. CIV. P. 56(c).  In determining whether a genuine issue of material fact

exists, the court must "resolve all ambiguities and draw all permissible factual inferences in

favor of the party against whom summary judgment is sought."  Gorzynski v. Jetblue Airways

Corp., 596 F.3d 93, 101 (2d Cir. 2010).  The non-moving party, however, "may not rest upon

mere conclusory allegations or denials, but must bring forward some affirmative indication that

his version of relevant events is not fanciful."  Podell v. Citicorp Diners Club, Inc., 112 F.3d 98,

101 (2d Cir.1997) (internal quotations omitted).

2

REDACTED

In this Circuit, the McDonnell Douglas standard for deciding summary judgment motions is applied to ADEA cases. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Gorzynsky, 596 F.3d at 106 ("[W]e remain bound by, and indeed see no reason to jettison, the [McDonnell Douglas] burden-shifting framework for ADEA cases."). Under McDonnell Douglas, the plaintiff has the initial burden to establish a prima facie case by meeting a four prong test. See id. at 106-07. Plaintiff must prove that: 1) he was within the protected age group; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) the adverse action occurred under "circumstances giving rise to an inference of discrimination." Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide legitimate, nondiscriminatory reasons for the adverse employment action. See Gorzynsky, 596 F.3d at 106. Finally, if the defendant sets forth legitimate non-discriminatory reasons for the adverse employment action, the burden shifts back to the plaintiff to establish that the allegedly nondiscriminatory reasons were merely pretext and that the true reason was discriminatory. See id.

Defendant admits that plaintiff has met the first three prongs of its initial burden under the McDonnell Douglas standard as applied to the ADEA and NYSHLR, but contests whether plaintiff has provided facts giving rise to an inference of discrimination and asserts that there were legitimate non-discriminatory reasons for firing Mr. Krupman.

## IV. Discussion

### A. Age Discrimination in Employment Act ("ADEA")

#### 1. Mr. Krupman establishes a prima facie case of age discrimination

3

"The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997) citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Fisher v. Vassar College, 114 F.3d 1332, 1335 (2d Cir.1997) (en banc). In determining whether the plaintiff has met his burden, the Court must decide whether "proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 204 (2d Cir. 1995).

Defendant does not contest that Mr. Krupman is within the class protected by the ADEA, that he was qualified for the job when he was hired, or that he was subject to an adverse employment action. Rather, Defendant asserts that Mr. Krupman has not established a prima facie case of age discrimination because he has not established that his termination occurred under circumstances giving rise to an inference of discrimination.

By demonstrating that he was replaced by a younger employee, Mr. Quirolo, who was outside of the protected class (Nagler Decl., Ex. Q ¶ 8), Mr. Krupman has established circumstances giving rise to an inference of discrimination, and thus established a prima facie case of discrimination. See Carlton v. Mystic Transp. Inc., 202 F.3d 129, 135 (2d Cir. 2000) ("Generally, a plaintiff's replacement by a significantly younger person is evidence of age discrimination."). Mr. Quirolo less than Mr. Krupman's 37 years of experience as a guidance counselor including eight at Iona. (Pl. Stmt. at ¶ 287.) Under these established facts, plaintiff has presented a prima facie case of age discrimination under the McDonnell Douglas test.

**2. Iona asserts nondiscriminatory reasons for the adverse employment action**

4

REDACTED

Once the plaintiff demonstrates a prima facie case of discrimination, the burden shifts to the defendant to assert nondiscriminatory reasons for the adverse employment action. Gorzynsky, 596 F.3d at 106. Iona asserts that "Mr. Krupman exhibited unprofessionalism, insubordination and an unwillingness to work as a partner with the administration and adapt to the school's use of technological advances." (Nagler Decl., Ex. Q at ¶ 14.) Specifically, Mr. Klein claims that Mr. Krupman met with students without appointments, allowed students to remain in his office unsupervised, exceeded the 20 minute meeting policy, and failed to abide by the "one student at a time" rule, all in violation of Iona's policies. (See id. at ¶¶ 19,25-26, 32-36, 128.) Iona asserts that these policies are necessary to foster a positive relationship between the guidance department and the students, teachers, parents, and administration.

The above reasons, "taken as true, would permit the conclusion that there were nondiscriminatory reasons for the adverse action." Carlton, 202 F.3d at 136. Accordingly, Iona has met the burden of asserting nondiscriminatory reasons for its adverse action.

### 3. Mr. Krupman raises a genuine issue of material fact as to whether Iona's alleged grounds for termination are pretext.

Mr. Krupman asserts that Defendant's evidence supporting its grounds for termination are inconsistent and raise genuine issues of material fact. The facts supporting the Defendant's grounds for termination are contained in the supporting affidavits of George Teasdale and Joseph Klein. (Nagler Decl., Ex. P, Ex. Q.)

Mr. Klein asserts that Mr. Krupman's 1999 evaluation, (Nagler Dec., Ex. E), provided Mr. Krupman with the instruction – "always have students supervised when in his office." (Nagler Decl., Ex. Q.) For each category in that evaluation, however, Mr. Krupman received a score of either "meets expectations," or in two of the other eleven categories, "exceeds expectations." (Id.) Nor was Mr. Krupman terminated following receipt of this instruction. That

Case 1:08-cv-07713-RPP-GAY   Document 41   Filed 04/13/11   Page 6 of 14

same evaluation also states: "Mr. Krupman is an experienced and talented counselor. His affable demeanor makes him easily approachable and respected by students and faculty." (Nagler Decl., Ex. E.)

Mr. Klein also points to Mr. Krupman's 2001 evaluation as grounds for his termination. Specifically, the evaluation provided a recommendation that Mr. Krupman follow departmental policies regarding the following:

> Students must not be left unattended in his office; students are to have scheduled appointments; he must discontinue allowing students to drop in without a prior appointment; he must strive to keep the length of the meeting to more than half the scheduled period; appointments are to be made for individual students for the most part; occasionally, more than one student could be seen simultaneously.

(Nagler Decl., Ex. F)

However, the evaluation also stated that "Mr. Krupman is a valued counselor who extends himself tirelessly for the students. He advocates for their goals and continually challenges students to aspire for even higher achievements." (Id.) Notably, Mr. Krupman was not terminated following this recommendation either.

Mr. Klein then cites to a May 24, 2001 memorandum to Mr. Krupman from Mr. Klein and Associate Headmaster Anthony Baxter warning Mr. Krupman that:

"[F]ailure to adhere to these polices will result in non-renewal for the 2002-03 school year.

- You are to meet with only one student at a time.

- With the exception of a crisis, you are only to meet with students who have a scheduled appointment with you.

- You are to work with the Director of Guidance regarding scheduling and refrain from asking chair people to place students into higher-level courses.

6

- A scheduled appointment should last no more than twenty minutes. It is understood that exceptions will have to be made from time to time.

- Students should not be removed from one particular class consistently for appointments.

- You are not to write late passes for students to gain admittance to class simply because they ask you for one.

- You will move into the office next door to Mr. Klein for the 2001-02 school year."

(Nagler Decl., Ex. G)

Plaintiff asserts that Defendant has been misleading in its failure, to provide the Court with Mr. Krupman's 2002 evaluation. This evaluation dated March 21, 2002 states that "Mr. Krupman has made significant improvements in those areas highlighted last year as being in need of it." (Declaration of William D. Frumkin ("Frumkin Decl.") dated Oct. 1, 2010, Ex. 1.) It cites only one category in which Mr. Krupman needs improvement -- "[m]aintains daily and weekly logs of activities" – and rates him in the highest category, "exceptional in meeting expectations," in five of the other eleven categories. The 2002 evaluation effectively eliminates the relevance of the earlier evaluations as grounds for Mr. Krupman's termination in 2007 since, by Defendants own admission, Mr. Krupman had modified his behavior to comply with Iona's policies. Further, Defendant has not provided evidence of any evaluation since 2000-2001 that support its decision to release, based on the reasons in the 1999 or 2001 evaluations. Accordingly, Mr. Klein's release in 2007 based on the 1999 and 2001 evaluations seems inconsistent both because the 2002 evaluation indicated significant improvements in the categories Mr. Klein's affidavit complains about and because Iona continued to renew Mr. Krupman's employment contract until 2007. See Carlton, 202 F.3d at 137 (noting that

7

Defendant argued consistently poor job performance over a number of years but continued to employ him, which indicates pretextualism).

Mr. Klein next supplies additional grounds for Mr. Krupman's termination, namely, Mr. Krupman's consistent failure to follow Iona's policies and procedures for class selection and his failure to follow Iona's policies and procedures for modifying students' schedules. (Nagler Decl., Ex Q at ¶¶ 49-59, 60-79.) Mr. Klein's affidavit speaks mainly in generalities about Mr. Krupman's role in advising students about the class selection process and about placement in higher level courses. No dates or specific events are cited. As a result, the Court is unable to evaluate whether the conduct complained of continued after the May 24, 2001 warning which required Mr. Krupman "to work with the Director of Guidance regarding scheduling and refrain from asking chair people to place students into higher level courses." (Nagler Decl., Ex. G.) Since no mention of these deficiencies is made in the 2002 evaluation and no dates are referenced in paragraphs 49 to 64 of the Klein Affidavit, these generalities are disregarded. Mr. Klein's affidavit, however, does refer to Mr. Krupman's 2005-2006 evaluation dated May 4, 2006 which does indicate that Mr. Krupman needs improvements in connection with the category "works with the Director regarding student schedules" but does not rate plaintiff as "unsatisfactory," the lowest category in any category. (Nagler Decl., Ex. K, Ex. Q at ¶ 66.) Under the "Commendations and Recommendations" section of that evaluation Mr. Klein wrote: "I commend Mr. Krupman for his experience, talent and sensitivity which he brings to his job every day. His students and their parents benefit greatly from his extensive knowledge and caring attitude. He works tirelessly for their well-being and in their interests." (Nagler Decl., Ex. K.)

8

Mr. Klein stresses that in this 2005-2006 evaluation he "once again recommended [that] Mr. Krupman adhere to the administration's directives "especially as they pertain to the placement of students in different course levels. Following assiduously the procedures which are written and/or orally communicated to him is a very important goal for Mr. Krupman to achieve in the 2006-2007 calendar year." (Nagler Decl., Ex. Q at ¶ 67.) [2]

In his comment to Mr. Klein's recommendation, Mr. Krupman responded on May 3, 2006 as follows:

"Mr. Klein and Mr. Teasdale:

This is a bogus recommendation!

A.      I am aware of the department(s) written policies pertaining to student placement. I am aware that the policies are bent (often) by department chairs and administrators. I am considered a trouble maker if I point out the inconsistencies. I am considered incompetent or insubordinate if I even suggest that a student might be better placed outside the policy. Thus a counselor, this counselor, is best used if he doesn't counsel, but [illegible]

B.      I realize that my counselor education took place 45 years ago, across the Hudson, but it seems wise that a person hired to counsel be allowed to do so especially with course selection in a high school. Mr. Teasdale serves as a court of last resort, but I have to trust (my trust is wavering) that as he makes the final decisions of course placement he might take into consideration the advice of the counselor, at least pretend to appreciate such advice."

(Nagler Decl. Ex. K.)

---

[2] As evidence of Mr. Krupman's insubordination, Mr. Klein also cites to an October 6, 2005 e-mail in which Mr. Krupman questions the administration's decision to stop making changes to students' schedules after a given point in the semester.(Nagler Decl., Ex. Q at ¶ 63.) This email is Exhibit J, not Exhibit I as stated in Mr. Klein's affidavit, to the Nagler Declaration. It reads: "NO MORE CHANGES…AN ok IDEA….But what becomes of the couple that I have IN PROCESS??????? Krup." (Nagler Decl., Ex. J.)

Mr. Krupman's response indicates that he believes he is being warned not to make suggestions about students' placement to Mr. Teasdale, Iona's principal. Previously, on May 24, 2001, he had been warned to refrain from asking chair people to place students in higher level courses. (Nagler Decl., Ex. G.) There is no indication in his prior evaluations that Mr. Krupman had been previously warned not to make such suggestions for a student's placement to the principal. Indeed, in his previous evaluations, Mr. Krupman had been commended for "working tirelessly for their well being and in their interests" or words to that effect. A jury could well decide that Mr. Krupman honestly and reasonably believed that Iona's policies envisioned the role of a guidance counsel to include advocating to the principal for students who felt that recognition for their achievements had been hampered by a teacher-student personality conflict or a faculty chair's personal dislike of a student, and that Mr. Krupman did not believe his response to be insubordinate. Furthermore, Mr. Krupman's response appears to be an isolated incident and not evidence of an insubordinate course of conduct. Moreover, he was not discharged following this response. Since Mr. Krupman denies his course of conduct was insubordinate and since he was not released following this response, an issue of credibility is raised as to this incident and whether Defendant's release on it was pretext.

Mr. Klein next points to Mr. Krupman's refusal to share information with his fellow guidance counselors about his students involved in bullying incidents as evidence of his insubordination. (Nagler Decl., Ex. Q at ¶ 78.) Mr. Klein asserts that Mr. Krupman stated, "I am not going to say anything about those students in this arena" while at a guidance department meeting on the issue. (Id.) Mr. Krupman denies that he refused to share this information. (Pl. Stmt. at ¶¶ 213, 215, 219.) Again, a credibility issue is raised.

10

### Mr. Krupman raises a genuine issue of material fact as to whether Iona's claim that he lacked technological proficiency was mere pretext

Iona also asserts that Mr. Krupman's inability to use technology led to his termination. (See Def. Mem. at 12-19, Nagler Decl., Ex. Q at ¶¶ 79-108.) Mr. Krupman asserts in response that 1) he was sufficiently able to use technology to perform his job and 2) he was not given the proper training to use any advanced technology required for a "paperless office." (See Pl. Opp. Memo at 21.) Mr. Krupman's challenge to Iona's contention again raises an issue of material fact.

Iona also asserts that Mr. Krupman's inability to use technology adversely impacted his counseling abilities and affected his relationship with parents. (See Nagler Decl., Ex. Q at ¶ 91.) These assertions are contradicted by the record. On his 2005-2006 evaluation, Mr. Krupman was given a grade of "satisfactory," the highest grade possible, for the category of "[w]orks efficiently with students, *parents*, faculty and director." (See Nagler. Decl., Ex. K.) (emphasis added). Again, such inconsistencies raise genuine issues of material fact as to whether Iona's claim that Mr. Krupman lacked technological proficiency was mere pretext.

### Mr. Krupman raises a genuine issue of material fact as to whether Iona's claim that he was unprofessional was mere pretext

As pointed out by Mr. Krupman, Iona's assertion of unprofessionalism is also directly contradicted by the record. (See Pl. Opp. Memo at 22.) All of the cited evaluations indicate that Mr. Krupman acted in a professional manner. (See id.; Nagler Decl., Ex.'s E, F, & K.) Additionally, Iona's citations to allegedly unprofessional emails fail to warrant summary judgment. In oral argument, Iona pointed to a single email that Mr. Krupman wrote to a parent regarding the STEP program. (See Nagler Decl., Ex. M.) This email fails to establish unprofessionalism such that a jury would necessarily agree and not find pretext. See Carlton,

11

202 F.3d at 135 (summary judgment is denied where the rational factfinder could conclude that the proffered reason was not the true reason for the adverse employment action).

In conclusion, for the aforementioned reasons, Mr. Krupman has raised genuine issues of material fact regarding the circumstances surrounding his termination such that a rational jury could determine that the nondiscriminatory reasons Mr. Klein and Mr. Teasdale rely on were pretextual and that he was terminated from Iona because of his age. Consequently, summary judgment on Mr. Krupman's claim under the ADEA is denied.

### B.  New York State Human Rights Law ("NYSHRL")

Mr. Krupman realleges each allegation in his complaint under the NYSHRL.  The Second Circuit has held that the standard governing NYSHRL claims at the summary judgment stage are identical to those governing claims under the ADEA. See Sutera v. Schering Corp., 73 F.3d 13, 16 n. 2 (2d Cir.1995).  Consequently, Iona's motion for summary judgment under the NYSHRL is also denied.

### V.  Conclusion

Mr. Krupman has successfully established a prima facie case of age discrimination. Further, because Mr. Krupman raised genuine issues of material fact such that a reasonable jury could conclude that Iona's purported reasons for his release were pretextual, Iona's motion for summary judgment is denied.

Copies of this sealed opinion and order were provided only to the Plaintiff and Defendant in this action. Defendant shall provide a redacted copy of this opinion for public filing within ten days of this opinion, and with three days notice to the Plaintiff.

Trial is scheduled to begin on Monday, May 9, 2011 at 10:30am. The parties are hereby ordered to submit their proposed voir dire, jury instructions, pre-trial order and any in limine

12

motions by Monday April 25, 2011. A settlement conference will be held on Monday May 2, 2011 at 9:30am.

SO ORDERED.

Dated:  New York, New York

April 4, 2011

Robert P. Patterson, Jr.

U.S.D.J.

13

Copies of this Order and Opinion sent to

**Counsel for Plaintiff**

**William David Frumkin**
Sapir & Frumkin LLP
399 Knollwood Road, Suite 310
White Plains, NY 10603
(914) 328-0366
Fax: (914) 682-9128

**Elizabeth Evelyn Hunter**
Sapir & Frumkin LLP
399 Knollwood Road, Suite 310
White Plains, NY 10603
(914) 328-0366
Fax: (914) 682-9128

**Counsel for the Defendant**

**Vincent A. Nagler**
Callan, Koster, Brady & Brennan LLP
One Whitehall Street
New York, NY 10004
(212)-248-8800
Fax: (212)-248-6815

**Warren S. Koster**
Callan, Koster, Brady & Brennan LLP
One Whitehall Street
New York, NY 10004
(212)-248-8800
Fax: (212)-248-6815